IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ISMAEL VAZQUEZ LARRAURI
Plaintiff
vs
UNITED STATES OF AMERICA
Defendant

CIVIL 16-1426CCC
(Related Cr. 08-0281-01CCC)

**OPINION AND ORDER**

Before the Court is Ismael Vázquez Larrauri's (hereinafter "Petitioner" or "Vázquez Larrauri") pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (**d.e. 1**), his Memorandum in Support (d.e. 1-1), the Government's Response (d.e. 8), and Petitioner's Reply (d.e. 9). For the reasons discussed below, the Court concludes that said Petition must be DENIED.

**I.   BACKGROUND**

On August 5, 2008, Vázquez Larrauri was charged along with seventy-one (71) other co-defendants in a seven-count Indictment[1] (Criminal 08-281CCC, d.e. 3).

Count One (1) charged that on or about February 1994, and continuing up to and until the return of the instant Indictment, in the District of Puerto Rico, specifically in the Municipalities of Cayey, Salinas, Coamo, Santa Isabel, Guayama, and Jayuya and within the jurisdiction of this Court, defendant [1] Ismael Vázquez Larrauri and other co-defendants, did knowingly and intentionally combine, conspire, and agree with each other and others, known

---

[1]Petitioner was charged in all seven counts.

and unknown to the Grand Jury, to commit an offense against the United States, that is: to possess with intent to distribute with intent to distribute and/or distribute controlled substances, to wit: in excess of one (1) kilogram of heroin, a Schedule I Narcotic Drug Controlled Substance; and/or in excess of fifty (50) grams of cocaine base, a Schedule II Narcotic Drug Controlled Substance; and/or in excess of five (5) kilograms of cocaine, a Schedule II Narcotic Dug Controlled Substance; and/or in excess of one hundred (100) kilograms of marijuana, a Schedule I Controlled Substance; and/or a detectable amounts of Oxycodone (commonly known as Percocet), a Schedule II Controlled Substance; and/or detectable amounts of Alprazolam (commonly known as Xanax), a Schedule IV Controlled Substance; within one thousand (1,000) feet of the real property comprising a public or private school and/or public housing project and/or playground, all in violation of Title 21, United States Code, §§ 841(a)(1), 846 and 860 (Criminal 08-281CCC, d.e. 3 at p. 6).

Counts Two (2), Three (3), Four (4) and Five (5) charged that on or about the year 2003, and continuing up to and until the return of the instant Indictment, in the District of Puerto Rico, specifically in the Municipalities of Cayey, Salinas, Coamo, Santa Isabel, Guayama, and Jayuya and within the jurisdiction of this Court, defendant [1] Ismael Vázquez Larrauri and other co-defendants, did knowingly and intentionally possess with intent to distribute: one (1) kilogram or more of heroin, Count Two (2); fifty (50) grams or more of cocaine base, Count Three (3); five (5) kilograms or more of cocaine, Count Four (4); and one hundred (100) kilograms or more of marijuana, Count Five (5) – all within one thousand (1,000) feet of a public or private school and/or

housing facility owned by a public housing authority and/or a playground, all in violation of 21 U.S.C. §§ 841 (a)(1) and 860; and 18 United States Code; § 2 (Criminal 08-281CCC, d.e. 3 at pp. 18-26).

Count Six (6) charged that on or about the year 2003, and continuing up to and until the return of the instant Indictment, in the District of Puerto Rico, specifically in the Municipalities of Cayey, Salinas, Coamo, Santa Isabel, Guayama, and Jayuya and within the jurisdiction of this Court, defendant [1] Ismael Vázquez Larrauri and other co-defendants, did knowingly and intentionally combine, conspire, and agree with each other and others, known and unknown to the Grand Jury, to commit an offense against the United States, that is, to possess firearms during and in relation to a drug trafficking crime as charged in Counts One, Two, Three, Four and Five of the instant Indictment, all in violation of Title 18, United States Code, § 924(c)(1)(A) and (o) (Criminal 08-281CCC, d.e. 3 at pp. 26,27).

Count Seven (7) was a money laundering forfeiture allegation pursuant to Title 18, United States Code, § 982(a)(1) and Rule 32.2(a) of the Federal Rules of Criminal Procedure (Criminal 08-281CCC, d.e. 3 at pp. 27-29).

On June 15, 2012, after a nine-days of trial, a jury found Vázquez Larrauri guilty on all counts of the Indictment (Criminal 08-281CCC, d.e. 2887). On December 12, 2012, Vázquez Larrauri was sentenced to imprisonment for the rest of his natural life as to counts one through six, to be served concurrently with each other. Judgment was entered on that same day (Criminal 08-281CCC, d.e. 3011 and d.e. 3012). On December 18, Vázquez Larrauri filed a Notice of Appeal (Criminal 08-281CCC, d.e. 3019). On

CIVIL 16-1426CCC  4
(Related Cr. 08-0281-01CCC)

February 13, 2015, the First Circuit Court issued its Judgment in which it affirmed Vázquez Larrauri convictions on all six counts and life sentences on Counts One (1), Two (2), Three (3), Four (4) and Five (5); it also ordered this court to enter a modified sentence of twenty years on Count Six (6) (Criminal 08-281CCC, d.e. 3418). Vázquez Larrauri did not file a petition for writ of certiorari before the Supreme Court, therefore his conviction became final on May 14, 2015.[2]

On March 10, 2106, Vázquez Larrauri filed a 28 U.S.C. § 2255 Petition alleging ineffective assistance of counsel during the trial proceedings and requested an evidentiary hearing (**d.e. 1**). On August 3, 2016, the United States filed its Response in Opposition (d.e. 8) and on August 22, 2016, Petitioner filed a Reply (d.e. 9).

## II. DISCUSSION

Vázquez Larrauri raised the following allegations of ineffective assistance of counsel:

(1) Failing to protect his Sixth Amendment right to confront witnesses (d.e. 1-1 at p. 3);

(2) Failing to object to irrelevant testimony of uncharged criminal acts (d.e. 1-1 at p. 3);

(3) Failing to move for a mistrial due to perjured testimony of a key government witness (d.e. 1-1 at p. 3);

---

[2] Where Supreme Court review is not sought, a judgment of conviction becomes final when the time expires for filing a petition of certiorari [90 days] contesting the appellate court's affirmation of conviction. Ramos-Martinez v. United States, 638 F.3d 315 (1st Cir. 2011).

CIVIL 16-1426CCC            5
(Related Cr. 08-0281-01CCC)

> (4) Failing to move for a mistrial when it became patently clear that repeat hearsay testimony overwhelmed procedural safeguards and incurably prejudiced his defense (d.e. 1-1 at p. 3);
>
> (5) Failing to move for a mistrial when an ICE agent coached a key government witness outside the courtroom concerning evidence and testimony (d.e. 1-1 at p. 3);
>
> (6) Failing to object to the prosecutor's improper conduct (d.e. 1-1 at p. 3); and
>
> (7) Failing to adequately prepare to counter testimony of murder and abuse and to advocate for his cause in a manner essential to the adversary system (d.e. 1-1 at pp. 3, 4).

### A.  **Ineffective Assistance of Counsel Standard**

The standard for an ineffective assistance of counsel claim is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Strickland v. Washington, 466 U.S. 668 (1984); Lema v. United States, 987 F.2d 48 (1st Cir. 1993). To succeed in a claim of ineffective assistance of counsel, Petitioner must show both incompetence and prejudice: (1) petitioner must show that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Argencourt v. United States, 78 F.3d 14 (1st Cir. 1996); Darden v. Wainwright, 477 U.S. 168 (1986); Lockhart v. Fretwell, 506 U.S. 364 (1993).

A petitioner bears a "very heavy burden" to have a sentence vacated premised on an ineffective assistance of counsel claim. Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996); Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). Under the Strickland standard, ineffective assistance occurs "only where, given facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." United States v. Rodriguez, 675 F.3d 48, 56 (1st Cir. 2012), quoting Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010), which quotes Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006).

To successfully satisfy the first prong of the Strickland test, petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Tejeda v. Dubois, 142 F.3d 18, 22 (1st Cir. 1998) (citing Strickland, 466 U.S. at 690). Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (citing Strickland at 689). Finally, a court must review counsel's actions deferentially, and should make every effort "to eliminate the distorting effects of hindsight." Argencourt v. United States, 78 F.3d at 16 (citing Strickland, 466 U.S. at 689).

The second prong of the Strickland test, the element of prejudice, also sets the bar high. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Argencourt v. United States,

CIVIL 16-1426CCC                        7
(Related Cr. 08-0281-01CCC)

78 F.3d at 16 (citing Strickland, 466 U.S. at 691).  Petitioner must "prove that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different."  Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994) (citing Strickland, 466 U.S. at 687).

This means that if petitioner is successful in showing deficiencies in his counsel's representation, he then must conclusively establish that those deficiencies led to a real prejudice against him in the criminal proceedings. Id. at 694.  Vázquez Larrauri has failed to satisfy both prongs of the Strickland standard in all of his ineffective assistance claims.

> **B.    (1) Counsel was ineffective for failing to protect his Sixth Amendment right to confront witnesses and (4) Counsel was ineffective for failing to move for a mistrial when it became patently clear that repeat hearsay testimony overwhelmed procedural safeguards and incurably prejudiced Vázquez Larrauri's defense**.

Vázquez Larrauri claims that his rights under the Sixth Amendment Confrontation Clause were violated when the Court allowed witnesses to submit impermissible hearsay testimony to the jury and his counsel failed to object and to move for a mistrial (d.e. 1-1 at p. 5).  Petitioner claims that no conspiracy nexus was established between him and the person testifying and, therefore, defense counsel was ineffective for failing to object to inadmissible hearsay admitted "under the government's largely uncontested theory that they were hearsay admissions of co-conspirators."  (d.e. 1-1 at p. 13).  Petitioner specifically challenges the Court's decision to admit the hearsay testimony of Noelia López Ortiz (hereinafter "López Ortiz"), a co-conspirator who Petitioner alleges provided hearsay testimony against him regarding fire, shooting, torture, and murder (d.e. 1-1 at p. 6).

As a general rule, hearsay evidence is inadmissible in criminal trials. See United States v. Laureano-Perez, 797 F.3d 45, 65 (1st Cir. 2015); United States v. Paz-Alvarez, 799 F.3d 12, 29 (1st Cir. 2015). Statements made by a party's co-conspirator's "during and in furtherance of a conspiracy," however, are not hearsay and may be introduced as evidence. United States v. Rodriguez-Milian, 820 F.3d 26, 33 (1st Cir. 2016) (quoting Fed. R. Evid. 801(d)(2)(E)). If properly admitted, such declarations may be considered for the matter asserted. United States v. Colon-Diaz, 521 F.3d 29, 35 (1st Cir. 2008); United States v. Castellini, 392 F.3d 35, 50 (1st Cir. 2004). To admit co-conspirator statements, the Court must determine by a preponderance of the evidence that the declarant and the defendant were members of the same conspiracy and that the statement was made in furtherance of the conspiracy. Paz-Alvarez, 799 F.3d 12, 29; United States v. Ciresi, 697 F.3d 19, 25 (1st Cir. 2012).

Vázquez Larrauri's contention that the Court allowed witnesses to give impermissible hearsay testimony to the jury is contrary to the trial record. The record is replete with evidence supporting the Court's assessment and admission of the testimonies pursuant to Fed. R. Evid. 801(d)(2)(E). This supporting evidence included not only the testimony of various cooperating co-conspirators, but also that of law enforcement officers, recordings, drug ledgers, and seizures of drugs and firearms. Vázquez Larrauri's asserts that "no conspiracy nexus was shown between Petitioner and the person testifying." To admit a co-conspirator statement pursuant to Fed. R. Evid. 801(d)(2)(E), "the district court must determine by a preponderance of the evidence that the

declarant and the defendant were members of the same conspiracy and that the statement was made in furtherance of the conspiracy." Paz-Alvarez, 799 F.3d 12, 29 (1st Cir. 2015).

Vázquez Larrauri has specifically identified one hearsay testimony that he alleges the Court should not have admitted and which his counsel failed to object: the testimony of López Ortiz related to fire, shooting, torture, and murder.

### C. López Ortiz' Testimony Regarding Fire and Shooting

Vázquez Larrauri contends that the Court erroneously admitted into evidence López Ortiz' hearsay testimony connecting him with a fire, a shooting, and an intent to shoot others using purely uncorroborated and hearsay testimony. The record shows that López Ortiz testified that she had heard this from her niece[3] who had in turn heard it from her husband Mickey (Criminal 08-281CCC, d.e. 3158 at pp. 56, 57). However, the record indicates that defense counsel did raise an objection in this regard, and after a side-bar, the Court proceeded to strike the hearsay statement from the record and to instruct the jury accordingly (Criminal 08-281CCC, d.e. 3158 at pp. 57-59). Since defense counsel objected to López Ortiz' niece hearsay testimony, petitioner's claim of ineffective assistance of counsel on this matter has no foundation.

### D. López Ortiz' Testimony Regarding Torture and Murder

Vázquez Larrauri contends that the Court erroneously admitted into evidence López Ortiz' hearsay testimony connecting him to torture and murder.

---

[3] The niece was not a co-conspirator.

The record reflects that López Ortiz testified that she knew about the torture and murder because Mickey was listening to "it" on the phone and her niece[4] was crying as she was telling him to ask them not to do anything else (Criminal 08-281CCC, d.e. 3158 at p. 80). The record also reflects that the Court immediately intervened before the witness could continue testifying and proceeded (1) to instruct the witness (2) and the jury and to (3) strike the statement from the record (Criminal 08-281CCC, d.e. 3158 at p. 80). The Court did not admit López Ortiz' niece's hearsay testimony connecting Petitioner to torture and murder. In light of the prompt curative action, said hearsay testimony did not result in prejudice. Considering that defense counsel's failure to object to the hearsay testimony connecting Petitioner to torture and murder did not result in prejudice, his claim of ineffective assistance of counsel as to this matter also fails.

In sum, Petitioner's claims that the Court allowed witnesses to submit impermissible hearsay testimony before the jury and his counsel failed to object and move for a mistrial lack merit. The Court finds that Petitioner's first (1) and fourth (4) claims of ineffective assistance of counsel are not supported by the trial record.

### E. **(2) Counsel was ineffective for failing to object to irrelevant testimony of uncharged criminal acts**.

Vázquez Larrauri alleges that his attorney was also ineffective for failing failure to object to irrelevant testimony of murder and abuse. He mainly refers to López Ortiz' testimony regarding his involvement in the murder of her son

---

[4] The niece was not a co-conspirator.

(d.e. 1-1 at pp. 16-20) and avers that the murder testimony was unnecessary and overly prejudicial (d.e. 1-1 at p. 18).

The record reflects that Vázquez Larrauri's defense counsel did not object to López Ortiz' testimony about three murders[5] (d.e. 3417 at p. 22). On direct appeal Vázquez Larrauri challenged the admissibility of the testimony about these murders on the ground that its probative value was substantially outweighed by a danger of unfair prejudice. The Court of Appeals reviewed the testimony of López Ortiz on the murders and determined that "this testimony was highly probative to show the manner in which the drug conspiracy operated and the way its members furthered its goals . . . and it showed that Vázquez led the conspiracy by enforcing its rules and protecting it from internal and external threats." The Court of Appeals concluded that there was no abuse of discretion or plain error in admitting López Ortiz' testimony about the murders (d.e. 3417 at p. 24). Petitioner's claim of ineffective assistance of counsel for failure to object to "irrelevant" testimony of murder lacks merit, given the highly probative value of such testimony and the fact that it was not unfairly prejudicial to petitioner.

**F.    (3) Counsel was ineffective for failing to move for a mistrial due to perjured testimony of a key government witness**.

Vázquez Larrauri alleges that defense counsel was ineffective for failing to move for a mistrial due to testimony offered by government witness López Ortiz regarding her son's murder. He specifically claims that López Ortiz

---

[5]Two of the government's cooperating witnesses, López Ortiz and J.S., testified that Vázquez Larrauri ordered the killings of three persons: López Ortiz' son El Arabe, Cheo Cabezón, and Mamart. The Court refused to admit additional testimony or evidence about these three murders or any evidence about two other murders (d.e. 3417, p. 22).

falsely testified that she had first-hand knowledge of her son's murder because she "saw it" (d.e. 1-1 at p. 21), even though she later testified that she came out of her apartment immediately after hearing the shots (d.e. 1-1, at p. 22). A close review of the record shows that López Ortiz' testimony that she "saw it" was in reference to her knowledge of the **identity of her son's killer**.

> Q. Ma'am, have you ever heard of the name Dulfo?
>
> A. Yes.
>
> Q. Who is Dulfo?
>
> A. The one who killed my son.
>
> Q. Did Dulfo have any role in Tara's drug organization?
>
> A. Yes.
>
> Q. What did he do for Tara?
>
> A. As a triggerman.
>
> Q. When you say that you know Dulfo killed your son, is it because somebody told you or is it because you saw it?
>
> A. I saw it.
>
> Q. Could you see who the person was that killed your son?
>
> A. Yes, I saw him, and he also confessed it to me.

(Criminal 08-281CCC, d.e. 3158 at p. 61).

To that effect, López Ortiz further testified that she saw and recognized Dulfo as he was fleeing the scene.

> Q. Could you see where he was? Could you see him?
>
> A. When I heard the shots, I thought they were firecrackers. But I anyway went out running. When I got out to the hallway, my son was already on the ground like that, and Dulfo was coming out through the hallway, there's a little bridge and he was coming out underneath it, and he turns up

> and he fires three times . . . he continued right there running to the first entrance and he goes down through the back.
>
> Q. When you say he, you mean Dulfo?
>
> A. Dulfo, yes. I saw him very well.

(Criminal 08-281CCC, d.e. 3158 at p. 64).

The record does not support the mistrial allegation based on perjured testimony by López Ortiz. It follows, therefore, that he cannot claim that his attorney's performance was deficient for failing to move for a mistrial due to perjured testimony from this key government witness.

**G. (5) Counsel was ineffective for failing to move for a mistrial when an ICE agent coached a key government witness outside the courtroom concerning evidence and testimony.**

Vázquez Larrauri claims that defense counsel was ineffective for failing to move for a mistrial when it became known that government witness López Ortiz discussed testimony and identification with a TFO ICE Agent. He states that during a break of López Ortiz' testimony, TFO ICE Agent Lynette Campos questioned López Ortiz outside the courtroom about her vision (d.e. 1-1 at p. 37). Petitioner argues that counsel should have moved for mistrial based on "egregious conduct which violated his constitutional rights and influenced the witness' testimony" (d.e. 1-1 at p. 37).

The record shows that the prosecutor, outside the presence of the jury, brought to the Court's attention the López Ortiz exchange with the ICE agent.

> Mr. Massucco: During the first break this morning the witness – we took like a ten-minute, I think it's when she was crying or teared up. She was off the stand, she had been shown several photos, a couple of which she did not identify.

CIVIL 16-1426CCC 14
(Related Cr. 08-0281-01CCC)

> The agent, I think Lynette Campos is her name, that was with her, when they were leaving or when they were going back to the room, asked her if her vision was okay.
>
> The witness said that she didn't see well, was her answer to the agent, that she didn't see well and that some of the photos she thought she recognized, but they were shown to her in black and white this time.

(Criminal 08-281CCC, d.e. 3158 at p. 92).

After inquiring further on the matter, the Court warned agent Lynette Campos to refrain completely from talking to a witness who was testifying or might be re-called to testify because that brought exchanges that could be viewed as coaching (Criminal 08-281CCC, d.e. 3158 at p. 96). The Court did not find that agent Lynette Campos had incurred in either coaching or in any misconduct.

Considering that there is no factual basis on the record for Petitioner's mistrial allegation --that an ICE agent coached López Ortiz outside the courtroom concerning evidence and testimony-- he cannot claim that his attorney's performance was deficient for failing to move for a mistrial.

**H. Counsel was ineffective for failing to object to the prosecutor's improper misconduct.**

Vázquez Larrauri alleges that defense counsel failed to object to misconduct by the trial prosecutor, including improper bolstering of witness testimony and overly prejudicial and inflammatory comments made by the prosecutor in the presence of the jury (d.e. 1-1 at pp. 39-43).

The record shows that Vázquez Larrauri had raised on direct appeal the claim of prosecutorial misconduct based on the same arguments of improper vouching for a government witness, improper comment on his decision not to

testify, unduly inflating the jury's passions, and misstating or exaggerating the evidence on the record (Criminal 08-281CCC, d.e. 3417 at pp. 10-19). The Court of Appeals rejected all of the arguments of prosecutorial misconduct (Criminal 08-281CCC, d.e. 3417 at pp. 10-19). Petitioner has not shown a basis to support a claim of defense counsel failing to object to prosecutorial misconduct.

> **I.	Counsel was ineffective for failing to adequately prepare to counter testimony of murder and abuse, and advocate for his cause in a manner essential to the adversary system**.

In a signed declaration Vázquez Larrauri raises a final ineffective assistance of counsel claim arguing that his attorney failed to adequately prepare for trial (d.e. 1-1, Exhibit A at pp. 45, 46). He alleges that defense counsel was not prepared to cross-examine government witnesses and did not seem to have any defense strategy against the government witnesses (d.e. 1-1, Exhibit A at pp. 45-46).

As detailed above (from B. to G.), Vázquez Larrauri has failed to meet the Strickland standard in all of his previous specific claims of ineffective assistance of counsel. His last claim of ineffective assistance of counsel is a generalized allegation that defense counsel was not prepared for trial (d.e. 1-1, Exhibit A at p. 45). He states in his signed declaration that defense counsel told him that he was prepared for trial, however, he advised him not to go to trial because the Government planned to put Noelia López Ortiz on the stand to testify about the murder of her son, which the government was going to blame on him somehow (d.e. 1-1, Exhibit A at p. 45). He further states that after this conversation with his attorney, he strongly questions his attorney's

ability to meaningfully defend him at trial (d.e. 1-1, Exhibit A at p. 45). Contrary to his perception, defense counsel's advice to plead guilty, considering the prosecution's announced witnesses, was not an indication of either counsel's preparedness or ability to adequately defend him at trial. Rather, it was a substitute legal advice in light of the Government proposed evidence. Petitioner's signed declaration alleging that his attorney was not prepared for trial is a broad claim that neither shows incompetence nor prejudice. It does not comply with the Strickland standard for an ineffective assistance of counsel claim. Consequently, his claim of ineffective assistance of counsel for failure to adequately prepare for trial lacks merit.

### III. CONCLUSION

For the reasons stated, Petitioner Ismael Vázquez Larrauri's Motion under 28 U.S.C. § 2255 (**d.e. 1**) supported by a Memorandum (d.e. 1-1) is DENIED. Petitioner's request for an evidentiary hearing is also DENIED. Judgment shall be entered in accordance with this Opinion and Order.

SO ORDERED.

At San Juan, Puerto Rico, on March 27, 2019.

S/CARMEN CONSUELO CEREZO
United States District Judge